UNITED STATES DISTRICT COURT

IN AND FOR THE WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **HELEN B. MORRIS** | : | **CIVIL ACTION NO. 06-1965** |
| Versus | : | **JUDGE TRIMBLE** |
| **MICHAEL J. ASTRUE, Commissioner of Social Security** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

This matter was assigned to the undersigned United States Magistrate Judge for review and submission of a report and recommendation as allowed by law. 28 U.S.C. § 636(b)(1)(B). For reasons given more fully below, the undersigned recommends that the Commissioner's decision should be affirmed.

**I.**

**NATURE OF THE CASE**

Through this proceeding Helen B. Morris ("Claimant") seeks judicial review of the Partially Favorable determination of the Administrative Law Judge ("ALJ") dated March 18, 2004, as well as the refusal of the Office of Disability Adjudication and Review to assume jurisdiction dated August 19, 2006.

**II.**

**PROCEEDINGS**

On March 27, 2000, Claimant made an application for disability insurance benefits with the Social Security Administration claiming entitlement to those benefits under Title II and Part

A of Title XVIII of the Social Security Act. Claimant maintained that difficulties with diabetes, hypertension, arthritis, and blacking out limited her ability to work. She stated in her original application that she was constantly hurting and was unable to sit or walk for long periods of time. Claimant stated that her illnesses first bothered her March 15, 1997, and that she was unable to work since that date. Claimant also stated her illnesses or conditions caused her pain. In her original application Claimant specifically denied having been seen by a doctor, hospital, clinic, or anyone else for emotional or mental problems that limited her ability to work. A Notice of Disapproved Claim was issued July 5, 2000.

Claimant filed a timely Request for Hearing by Administrative Law Judge on October 10, 2000, and a hearing was held August 29, 2001. On November 14, 2001, the ALJ issued a Notice of Decision, Partially Favorable. The ALJ concluded, after review of the evidence presented to him at that time, that Claimant was not disabled within the meaning of the Social Security Act prior to attainment of age 50 but that she did meet the criteria thereafter. Claimant's request for review to the Office of Hearings and Appeals of the Social Security Administration was denied on June 28, 2002.

Claimant sought judicial review of that initial determination in the proceeding entitled "Morris v. Barnhart" and bearing docket number 02-1921 of this court. On April 23, 2003, that litigation was terminated by the granting of a consent judgment submitted in response to an unopposed motion to reverse and remand filed by the defendant Commissioner. The basis of the Commissioner's motion was that remand to the ALJ was necessary so that the ALJ could evaluate the severity of Claimant's mental impairment, to address the weight to be given to the opinion of the psychologist who had provided reports considered by the ALJ, and the extent to which that impairment may reduce Claimant's ability to work.

On June 24, 2003, the Office of Hearings and Appeals of the Social Security Administration issued an order remanding the case to the ALJ. The order instructed the ALJ to obtain additional evidence concerning Claimant's mental impairment, which evidence was to include a consultative psychiatric examination about what claimant is able to do despite her mental impairment. The ALJ was also to further evaluate the severity of Claimant's mental impairment and, if warranted by the expanded record, obtain evidence from a vocational expert (VE) to clarify the effect to the assessed limitations on Claimant's occupational base.

Another hearing was held on January 6, 2004. At this hearing the ALJ took testimony from Dr. Thomas Pain, a psychologist, from the Claimant herself, and from Lionel Bordlon, a VE. On March 18, 2004, the ALJ issued a Notice of Decision – Partially Favorable. This decision discussed mental impairments of the Claimant as identified by the experts but ultimately reached the same conclusion as did the previous decision concerning Claimant's disability. What both decisions determined was that:

(1) Claimant was insured for disability insurance benefits through December 31, 1997;
(2) Claimant has not engaged in substantial gainful activity since the alleged onset of disability;
(3) Claimant has impairments considered "severe." The second ALJ decision identified those impairments as of December 31, 1997, (date of expiration of her insured status) as being degenerative joint disease of the knees, lumbar strain, diabetes, hypertension, and obesity. The second ALJ decision identified impairments as of March 20, 2000, (date of Claimant's 50th birthday) as all of those that existed on December 31, 1997, and anxiety disorder as well;
(4) No impairment or combination of impairments met or were medically equal to one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 ("the Listing");
(5) Claimant has residual functional capacity to perform sedentary work. The second ALJ determination set forth the exertional requirements for a full range of sedentary work but for the period beginning with the filing of her application for SSI added the ability to perform simple one and two-step instructions;
(6) Claimant is unable to perform past relevant work;

    (7)     Prior to May 10, 2001, Claimant was a "younger individual." As of May 10, 2001, Claimant is a "person closely approaching advanced age;"
    (8)     Claimant has a limited education;
    (9)     Claimant has no transferable skills from past relevant work;
    (10)   With respect to available employment for Claimant's SSI claim, the first decision found that Claimant as of May 10, 2001, had residual functional capacity to perform the full range of sedentary work. The second decision found that claimant had residual functional capacity on May 10, 2001, to perform a "significant" range of sedentary work.
    (11)   Claimant was not under a disability as defined in the Social Security act at any time before May 10, 2001, but she became disabled as defined by the act on May 10, 2001.

Each opinion addressed step five of the sequential process mandated by law[1]; however, the second opinion incorporated the input of the VE with respect to jobs available in the national economy that could be performed by a hypothetical individual, twenty-five percent of which could be performed by Claimant prior to May 10, 2001.

    Finally with respect to the ALJ proceedings, the first determination found Claimant's allegations regarding her limitations to not be totally credible for reasons set forth in that decision. The second determination stated that Claimant's allegations regarding her limitations "are credible to the extent they are consistent with the objective medical evidence and the conclusions stated herein."

    Once again Claimant sought relief from the Office of Disability Adjudication and Review. On August 19, 2006, that office found that it had no reason under its rules to assume jurisdiction. Claimant filed this action seeking review of the findings of the Commissioner.

### III.

### STANDARD OF REVIEW

    A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards to evaluate the evidence and whether the decision is supported

---

[1] Social Security Administration regulations require a five-step sequential analysis for initial disability determinations. See 20 C.F.R. § 404.1520(a)-(f).

by "substantial evidence" in the record as a whole. *Masterson v. Barnhart*, 309 F.3d 267 (5th Cir. 2002); *Leggett v. Chater,* 67 F.3d 558 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378 (5th Cir. 1988). "Substantial evidence" is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Myers v. Apofel*, 238 F.3d 617 (5th Cir. 2001); *Boyd,* supra.

A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Myers*, supra; *Boyd*, supra. A district court may neither reweigh the evidence in the record nor may it substitute its judgment for the Commissioner's but rather it must scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413 (5th Cir. 2005); *Masterson*, supra. To determine whether the decision to deny Claimant's claim for disability benefits is supported by substantial evidence, the court weights the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) the plaintiff's age, educational background, and work history. *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995); *Wren v. Sullivan*, 64 F.3d 172 (5th Cir. 1991).

### IV.

### CLAIMANT'S "STATEMENT OF ERRORS"

Applying the standards of review set forth above and with respect to the particular complaints lodged by the Claimant, we make the following findings.

    A.    <u>Claimant argues that the ALJ erred in relying exclusively on the Medical-Vocational Guidelines</u>.

Claimant maintains that the final decision of the Commissioner must be reversed because she suffers from nonexertional impairments – obesity and hypertension – the existence of which precludes application of the Medical-Vocational Guidelines to establish that work existed for her as of December 31, 1997.  Claimant maintains that jurisprudence holds that the very existence of these nonexertional impairments mandates the taking of additional evidence of the effect that these impairments would have on Claimant's residual functional capacity.  Claimant maintains that the ALJ failed to take such additional evidence when evaluating her disability as of December 31, 1997, and that failure mandates remand.

The Commissioner can meet his step five burden[2] by demonstrating that "the claimant can perform other substantial work in the national economy."  *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005).  Claimant asserts that the ALJ erred by relying solely on the Medical-Vocational Guidelines ("Grid Rules") to find that the Commissioner had met his burden at step five and that she was not disabled.  Claimant argues that she suffers from significant non-exertional impairments – hypertension and obesity – such that reliance solely on the Grid Rules was impermissible.[3]  Claimant maintains that ALJ's decision at step five is unsupported by substantial evidence because, Claimant maintains, the Commissioner failed to provide evidence of the existence of sufficient work for a person with Claimants's residual functional capacity in the national economy.

Because the Commissioner did not bring forth additional evidence at step five, review must focus solely on whether bare application of the Grid Rules to meet the Commissioner's step

---

[2] See fn. 1.
[3] *See Crowley v. Apfel,* 197 F.3d 194, 199 (5th Cir.1999) ("Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's non-exertional impairments do not significantly affect his residual functional capacity."); *Loza v. Apfel,* 219 F.3d 378, 399 (5th Cir..2000) ("[I]f it should be determined on remand that [claimant's] non-exertional mental impairments during the period of disability were not merely a slight abnormality of minimal effect on ability to work, the ALJ's reliance on the Grid Rules at the fifth level also constitutes error and must be reconsidered.").

five burden was permissible. In other words, the issue is whether there was substantial evidence that claimant did not suffer from significant non-exertional impairments which would render use of the Grid Rules improper.

At step two, the ALJ made findings of impairment specific to each of Claimant's claims – both the Disability Insurance Benefits claim and the Supplemental Security Income claim. As to the Title II claim for which Claimant assigns error, the ALJ found that, as of the expiration of her insured status on December 31, 1997, Claimant suffered the following severe impairments: degenerative joint disease of the knees, lumbar strain, diabetes, hypertension, and obesity. The ALJ went on to conclude that, although Claimant has "a severe combination of impairments, none are severe enough to meet or medically equal, either singly or in combination, to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."

This conclusion is supported by the evidence. At the outset, the ALJ reviewed "the objective medical evidence and the conclusions stated therein." Specifically, the ALJ considered the documentation of morbid obesity, degenerative changes of the lumbar spine, and joint diseases of both knees. Furthermore, the record demonstrates that Claimant's hypertension has been adequately controlled by medication and that the medical evidence establishes that Claimant's blood pressure tested within acceptable ranges throughout the relevant period.

Although Claimant did not list anxiety disorder as a non-exertional impairment to be considered, it bears noting that the ALJ did in fact consider this element as well.[4] In addition to a discussion of the medical evidence of Claimant's physical limitations, the ALJ reviewed the mental health evidence. This evidence included the testimony of the psychologist who reviewed the 2001 evaluations and those evaluations themselves. The ALJ also noted Claimant's admitted

---

[4] In both 2001 evaluations, the psychologist concluded that Claimant suffered from anxiety disorder.

ability to care for herself and two children and the fact that Claimant had never required treatment for anxiety.

The ALJ concluded that Claimant's anxiety disorder, although indicative of a severe impairment, was "not of the severity required to meet or equal the requirements of listing 12.06 or any other listed impairment." Thus, the ALJ's finding that Claimant's combination of severe impairments did not prevent her from performing a full range of sedentary work is supported by substantial evidence.

Claimant asserts that the ALJ "did not discuss whether [Claimant's] RFC was 'significantly impaired' by her combined severe impairment" and that the ALJ "chose to not elicit testimony for [sic] a VE." This characterization of the ALJ's analysis ignores the totality of the findings. In particular, as regards Claimant's Title II claim, the ALJ conducted a thorough review of the relevant medical and psychological evidence and concluded that Claimant "retained the residual functional capacity to lift and carry ten pounds occasionally, stand and walk two hours in a workday and sit six hours in a workday" and found that Claimant "had no non-exertional limitations prior to December 31, 1997." This finding was the explicit basis for the ALJ's determination to apply the Medical-Vocational Guidelines to direct his unfavorable decision. And, in contrast to Claimant's implied assertion that the ALJ was unaware of his obligation to solicit testimony from a vocational expert, the ALJ made clear his authority to take administrative notice of the existence of suitable occupations in the national economy *because* the ALJ found that Claimant's non-exertional impairments did NOT significantly affect her residual functional capacity. Thus, the ALJ was aware of the rule and properly applied the law.

Claimant relies on precedent from both the Third and Eighth Circuit Courts of Appeals to argue that when an ALJ finds that a claimant suffers significant non-exertional impairment, it is

improper for that ALJ to make a disability determination without the benefit of testimony from a vocational expert. However, in this circuit the use of the Medical-Vocational Guidelines is appropriate when it is established that a claimant's nonexertional impairments do not significantly affect his residual functional capacity. *Loza v. Apfel*, 219 F.3d 378, 398 (5th Cir. 2000); *see also White v. Astrue*, 239 Fed.Appx. 71 (5th Cir. 2007);

Based upon the foregoing we find that the ALJ reasonably determined that Claimant did not suffer from significant non-exertional impairments, his reliance on the Grid Rules at step five was proper, and that his findings of disability should not be overturned for this reason.

B.   <u>Claimant argues that the ALJ erred in evaluating Claimant's obesity</u>.

Claimant maintains that the ALJ inappropriately failed to consider her obesity under 9.09 of the Listings.[5] Through this assigned error, Claimant suggests that this court is compelled to consider obesity as comprising part of the Listing because it was not removed from the Listing until after the identified onset of her disability. In essence Claimant suggests that the inclusion of obesity in the Listing by the Social Security Administration at the time of the alleged onset of her disability creates some form of a substantive right in her favor which could not thereafter be modified absent express legislative intent.

As legal support for her contention Claimant cites jurisprudence that considers retroactivity of statutes enacted by Congress. The Listings are not statutes enacted by Congress – they are administrative rules adopted by the Social Security Administration that function as shortcuts whereby administrative notice of *per se* disability may be made. *See* fn. 3. Decisions

---

[5] "The Listings" is a vernacular term referring to Appendix I, Subpart P, Part 404 of the Regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. That appendix lists various impairments and indicators of their medical severity. Impairments in "the Listings" are so severe that they preclude substantial gainful activity and according the Listings functions as a shortcut whereby the ALJ may take administrative notice of *per se* disability for claimants with listings-level impairments. See *Washington v. Barnhart*, 413 F.Supp. 2d 784 (E.D. Tex. 2006) and cases cited therein.

discussing retroactive application of procedural versus substantive legislation have no bearing on this issue.

Claimant also notes that the Commissioner stated in his response to comments following the regulation promulgated to delete obesity as its own listing that "[t]hese final rules have only a prospective effect." 64 F.R. 46127. While the Commissioner did give that response, the comment to which he was responding was an inquiry as to whether this action would cause removal from the rolls of persons already determined to be disabled because of obesity and the quoted statement was inserted to note that it would not. Nevertheless, that same portion of the Federal Regulation has been cited as being a clear indication of the Commissioner's intent that adjudications made after October 25, 1999, be made in accordance with the revised listing insofar as an award cannot be made on the basis of a listing which was deleted prior to final adjudication of a claim. *See Allen v. Apfel*, 2001 WL 253120 (E.D. La. 3/14/01).

Finally, and contrary to Claimant's statement on page 10 of her memorandum, SSR 00-3p[6] (providing additional guidance on how the SSA would evaluate obesity in disability claims once obesity was deleted from the List of Impairments) does indeed address how the change affects claims filed after August 24, 1999. That ruling states as follows:

> The final rules that deleted the listing became effective on October 25, 1999. The final rules deleting listing 9.09 apply to claims that were filed before October 25, 1999, and that were awaiting an initial determination or that were pending appeal at any level of the administrative review process or that had been appealed to court. The change affected the entire claim, including the period before October 25, 1999. This is our usual policy with respect to any change in our listings.

65 F.R. 31042. If the deleted provision would be removed from consideration for a claim that was actually filed before October 25, 1999, it would certainly be removed from consideration for

---

[6] 65 F.R. 31039.

a claim that was filed after that date, even if the alleged onset of disability was before October of 1999.

We find this contention to be without merit.

C. <u>Claimant argues that the ALJ erred in failing to follow the Appeals Council remand order.</u>

Through this assignment Claimant suggests that the matter should be remanded because the ALJ in completing his assignment following remand failed to secure a consultative psychiatric examination with medical source statements about what Claimant could do despite her mental impairment.

The remand from the Appeals Council was a direct result of the order issued by this court on April 17, 2003, in "Morris v. Barnhart," number 02-1921 of this Court. The order issued by this Court did not mandate psychiatric examination, only reevaluation of Claimant's mental impairment and addressing the weight given to the opinion of the psychologist who issued the initial reports.

The ALJ addressed the Appeals Council remand in his written decision of March 18, 2004. In that decision the ALJ referenced the Appeals Council "suggestion" that psychiatric examination may be necessary but concludes that such an evaluation conducted at that late date could not provide better information of a mental condition that existed prior to May 10, 2001, than did the evaluations conducted in January and June of 2001 that were already considered. For that reason the ALJ did not obtain a new consultative psychological or psychiatric evaluation of Claimant's current condition.

Claimant stresses that this Court "should refuse to condone the anarchy represented by the ALJ's substitution of his function for that of the Fifth Circuit Court of Appeals." Assuming Claimant intended to insert "Appeals Council" instead of referring to the United States Fifth

Circuit Court of Appeals, we decline to characterize the ALJ's actions as "anarchy." Additionally, and while Claimant complains vociferously that this "defiance" should not go unpunished, Claimant fails to state how a psychiatric evaluation conducted in 2004 could better evaluate mental impairments that she claims to have existed in 1997 than did the evaluations conducted in 2001. We agree with the ALJ that evaluations conducted closer to the time in question would be more meaningful and relevant than those conducted at a more remote time.

Finally with respect to this issue we note Claimant's representative failed to note this deficiency in his correspondence dated March 23, 2004. Nevertheless, the Appeals Council indicated that it considered the exceptions raised in that letter and it presumably reviewed the proceedings below. The absence of any scolding directed to the ALJ or remand for him to have the previously ordered consultation conducted would indicate that the Council accepted the rationale of the ALJ in foregoing that evaluation.

We find this contention to be without merit.

D.  <u>Claimant argues that the ALJ erred in failing to find that Claimant met Listing 12.05(C).</u>

Through this final assignment Claimant maintains that she has met Listing 12.05(C), and therefore should be declared disabled as of December 31, 1997. Listing 12.05 lists mental retardation as an impairment the severity of which is met when the requirements of, *inter alia*, subparagraph (C) are met, i.e. that Claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Claimant has the burden to prove at step three that her impairment or combination of impairments matches or is equivalent to a listed impairment. *Sullivan v. Zebley*, 110 S.Ct. 885 (1990). For a claimant to demonstrate that her disorder matches an Appendix 1 listing, it must

meet all of the specified medical criteria for that individual impairment. An impairment, regardless of how severe, will not qualify if that impairment manifests only some of the specified criteria. *Id*.

Claimant testified twice and never mentioned as a limitation her inability to understand instructions or otherwise function from an intellectual standpoint. At the first hearing held August 29, 2001, Claimant clearly identified pain in her knees and back as that which precluded her from gainful employment. Claimant did acknowledge emotional difficulties[7] in response to questioning by her representative but she said nothing of being intellectually incapable of engaging in gainful employment. Similarly when she testified on January 6, 2004, Claimant identified pain in her back and knees as being the reason she was unable to work. When asked specifically by the ALJ whether she suffered mental or emotional difficulties, Claimant acknowledged having emotional problems in that she was irritated that her health was fading.

Listing 12.05(C) necessarily presumes that the results of test administered to evaluate intellect are valid. *Allen, supra*. The ALJ clearly questioned the validity of those result and concluded that the evidence did not suggest that the scores were valid or that Claimant was mentally retarded. The ALJ states:

> On testing, Dr. Whiteman specifically described the claimant's persistence as "variable," possibly due to her "current depressed state," though Dr. Whiteman did not diagnose a depressive disorder. Neither has [claimant] required treatment for depression or complained of symptoms of depression to her physicians. Thus, the undersigned is not persuaded that a "depressed state" explains the variable of the claimant's performance on the testing. Regardless of the basis for the inconsistent persistence, however, the claimant's June 2001 IQ scores cannot be found to be a valid and reliable estimate of her functioning.

The ALJ then goes on to detail the evidence upon which he relied to conclude that Claimant is not mentally retarded. The ALJ detailed Claimant's performance in formal education, noted that

---

[7] Claimant responded affirmatively to a direct question whether she was depressed but when asked whether she was on medication she indication that if it were prescribed she would refuse to take it. Tr. 122.

she never was enrolled in special education, and otherwise detailed instances throughout the record that would indicate that Claimant's functioning is above that of an individual who is mentally retarded. We find there is clearly evidence in the record upon which the ALJ could appropriately rely when reaching this conclusion.

The Listings themselves note that results of standardized intelligence tests may provide data to help verify the presence of mental retardation but since those results are only part of the overall assessment, any narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation. The reports submitted by Claimant fail to make any such comment. 12:00((D)(6).

It also bears noting that, judging by the questioning conducted by her own representative at the ALJ hearing, Claimant's representative must certainly have believed she was not "mildly retarded." For example, the representative asked his client "do you think that your morbid obesity is a critical component to your disability?" If Claimant's representative truly believed that Claimant was mentally retarded, he would certainly not have posed such a complex question and expect an intelligent response. It does not appear from the record that Claimant had any difficulty at all in responding to the question as it was posed.

Claimant did submit yet a third evaluation conducted by Dr. Jerry Whiteman on January 23, 2004, but this was submitted directly to the Appeals Council. The Appeals Council reviewed that report but concluded that this new evidence fell within the period of disability established in the decision being appealed and would not relate to the period prior to the onset of disability identified in the decision on May 10, 2001. 8/19/05 Appeals Council Decision, p. 2.[8]

---

[8] We also find that this comment of the Appeals Council validates the rationale used by the ALJ in declining to seek psychiatric or psychological consult after remand.

We find Claimant's final contention to be without merit.

## V.

## RECOMMENDATION

The Commissioner's decision should be affirmed.

## VII.

## OBJECTIONS

Any objections to this Report and Recommendation must be specific, in writing, and filed within ten days after being served electronically with this report.  28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(b) and 72(b).  Any party's failure to object bars that party from entitlement to *de novo* review by the district judge of these proposed findings and recommendations[9] and further bars appellate review except on the grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court[10].

THUS DONE AND SIGNED in Lake Charles, Louisiana, this 6th day of March, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

---

[9] *Rodriguez v. Bowen*, 857 F.2d 275 (5th Cir. 1988).
[10] *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).